UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jeffrey Riddle and RTM
Marketing Group, Inc.,

Civ. No. 17-623 (PAM/LIB)

      Plaintiffs,

v.

**MEMORANDUM AND ORDER**

Geckobyte.com, Inc. and
R. Tiegen Fryberger,

      Defendants.

---

This matter is before the Court on Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaims and Defendants' Motion for Summary Judgment on Plaintiffs' Claims. For the following reasons, Plaintiffs' Motion is granted and Defendants' Motion is denied.

**BACKGROUND**

Plaintiff Jeffrey Riddle is a computer programmer who operated Plaintiff RTM Marketing Group, Inc., a business that provides data and consulting services for the tire and automotive industry.

In November 2010, Defendant R. Tiegen Fryberger, controlling principal of Defendant Geckobyte.com, Inc., contacted Riddle about purchasing RTM. The two businesses offered similar services and had common customers, and Fryberger was primarily interested buying RTM so he could expand Geckobyte's business with a particular client, who worked with both businesses but did more business with RTM. (See Morris Aff. (Docket No. 69-1) Ex. 1 (Fryberger Dep.) at 42.)

Negotiations ensued and Riddle ultimately agreed to sell RTM to Geckobyte. The parties memorialized that agreement in two separate contracts: the Asset Purchase Agreement (APA) and the Employment Agreement (EA). In the APA, Geckobyte agreed to pay RTM a $100,000 down payment, $6,605.84 in monthly installments for five years, and an annual earn-out payment equivalent to 35% of RTM's gross receipts. (Riddle Aff. (Docket No. 68-1) Ex. 1 (APA) ¶¶ 2-3.) In the EA, Geckobyte agreed to pay Riddle $150,000 per year until December 31, 2020. (Riddle Aff. (Docket No. 68-2) Ex. 2 (EA).)

Riddle began working for Geckobyte in January 2011, and Fryberger and Riddle developed a process to handle payments under the APA and the EA. The relationship between Fryberger and Riddle eventually deteriorated, and in 2013, Fryberger terminated Riddle. Fryberger did not document any particular problems with Riddle's employment; he simply felt that Riddle did not "fit within the culture very well" and believed that "it was time for a change." (Fryberger Dep. at 122-23.) Fryberger gave Riddle $2,500 in severance and stopped all payments under the APA and EA. (Id. at 130, 136.) Following his termination, Riddle allegedly began communicating with Geckobyte's clients.

The Amended Complaint claims that Defendants breached the APA and the EA, and also includes causes of action for unjust enrichment, quantum meruit, conversion, and misrepresentation. (Am. Compl. (Docket No. 40).) Defendants counterclaimed that Plaintiffs breached the EA, violated the Uniform Trade Secrets Act, and tortiously interfered with a contractual relationship and with Defendants' prospective advantage. (Answer & Countercl. (Docket No. 15).) Plaintiffs now move for summary judgment on

Defendants' counterclaims, and Defendants move for summary judgment on Plaintiffs' claims.

Defendants contend that the EA established Riddle as an at-will employee who could be fired without cause, that Riddle agreed to forfeit his right to payments under the APA if he was terminated, and that Riddle violated the EA's non-compete provision. Plaintiffs argue that Riddle was not an at-will employee, the non-compete provision is unenforceable, and the remainder of Defendants' counterclaims are meritless.

**DISCUSSION**

**A.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.     Plaintiffs' Motion**

   **1.     Breach of EA**

Defendants allege that Riddle breached the EA's non-compete provision by communicating with Geckobyte customers and prospective customers after he was terminated. Plaintiffs argue that the non-compete is not enforceable because it does not protect any legitimate business interest, it is overbroad and unreasonable, and regardless, Defendants' contractual breaches preclude enforcement of the non-compete provision.

"[A] court may enforce a non-competition clause if it is necessary to protect reasonable interests of an employer, and does not impose unreasonable restraints on the rights of the employee." Klick v. Crosstown State Bank of Ham Lake, Inc., 372 N.W.2d 85, 87 (Minn. Ct. App. 1985). Here, the non-compete prohibits Riddle from "engag[ing] in any business or perform[ing] any service . . . or hav[ing] any interest . . . in any enterprise that shall solicit, divert, or compete for . . . any client, or prospective client who has been contracted with, contacted, solicited, or serviced by the Employer," without any geographic limitation, for a period of five years after his termination. (EA ¶ 14.4.)

Defendants assert that this non-compete protects its legitimate business interest in the good will of its clientele. Although they may have a legitimate need to protect Geckobyte by prohibiting "former employees from actively soliciting business from [its] customers," Davies & Davies Agency, Inc. v. Davies, 298 N.W.2d 127, 131 (Minn. 1980), Defendants have no legitimate interest in prohibiting former employees from soliciting Geckobyte's prospective clients. Moreover, as Plaintiffs suggest, compliance with this non-compete is essentially impossible—Riddle has no way to know who

4

Geckobyte considers a prospective client. Finally, the non-compete is not restricted to customers who are related to Riddle's employment with Geckobyte, which is significant because Geckobyte's business involves services in other industries. (See Fryberger Dep. at 9-13.)

The non-compete is thus overbroad and unnecessary to protect Geckobyte's reasonable interests. But even if the non-compete did protect Geckobyte's legitimate business interests, it is still unreasonable. Factors to consider in assessing the reasonableness of a non-compete provision include "the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends." Davies, 298 N.W.2d at 131 (quotation omitted).

Plaintiffs argue that the geographical boundary, which essentially covers the entire United States, is unreasonable because it would inhibit Riddle's ability to earn a livelihood. See Jim W. Miller Constr., Inc. v. Schaefer, 298 N.W.2d 455, 458 (Minn. 1980) (stating that enforcement of non-compete provisions is disfavored because it "restricts the covenantor's right to work and his ability to earn a livelihood"). However, a national boundary may be reasonable given the national nature of Geckobyte's business. See W. Publ'g Corp. v. Stanley, No. 03-cv-5832, 2004 WL 73590, at *10 (D. Minn. Jan. 7, 2004) (Tunheim, J.) (concluding that no geographic limitation was reasonable given the national and international nature of an internet business). There is no evidence that Riddle's work was restricted to a particular region or territory. On this record, the Court cannot conclude that the geographical boundary is unreasonable.

"The reasonableness of a temporal restriction depends on the nature of the job, the amount of time necessary to find and train a replacement for the employee, and the amount of time necessary for the employee's customers to become accustomed to the employee's replacement." Klick, 372 N.W.2d at 88. The temporal restriction here is five years. (EA ¶ 14.4.) Defendants argue that five years is necessary because "it takes that many years to establish good will and a legitimate following with specific clients." (Fryberger Aff. (Docket No. 72) ¶ 3.) This assertion is unsupported by any other evidence in the record and is thus too conclusory for the Court to rely on it. In any event, this argument is disingenuous. Defendants produced no evidence that Riddle received special training. And Minnesota courts have rejected similar temporal restrictions as unreasonable. See, e.g., Davies, 298 N.W.2d at 131 (reducing a temporal restriction from five years to one year because five years was improper); Klick, 372 N.W.2d at 88 (concluding that a three-year restriction was unreasonable where employee required no special training). The non-compete provision is thus unreasonable and unenforceable.

Finally, even if it the non-compete was otherwise enforceable, Defendants are not entitled to enforce the non-compete provision against Riddle. Generally, a party who does not substantially perform on a contract cannot enforce its rights under that contract. Material Movers, Inc. v. Hill, 316 N.W.2d 13, 18 (Minn. 1982). Here, the EA provided for a $25,000 severance if Riddle was terminated without cause. (EA ¶ 10.5.) Fryberger only gave Riddle $2,500. (Fryberger Dep. at 136.) Defendants do not dispute Plaintiffs' contention that this breach is an independent justification that precludes Defendants from enforcing the non-compete provision.

Plaintiffs' Motion on this Counterclaim is therefore granted.

## 2.      Uniform Trade Secrets Act

Defendants contend that Plaintiffs violated the Uniform Trade Secrets Act. The Uniform Trade Secrets Act, Minn. Stat. §§ 325C.01-.08, protects proven trade secrets through an action for misappropriation. Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 897 (Minn. 1983). A "trade secret" includes information that "(i) derives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Minn. Stat. § 325C.01, subd. 5. Here, the counterclaim alleges that Geckobyte's client list and related client information constitute trade secrets. (Answer & Countercl. ¶ 23.)

Plaintiffs contend that Defendants have not identified any actual trade secret. Defendants did not address this counterclaim in their opposition brief, apparently conceding that no trade secret exists. In any event, Geckobyte's client list was undoubtedly ascertainable to Plaintiffs because RTM had many customers in common with Geckobyte before the sale, and there is no evidence that Defendants attempted to keep Geckobyte's client information a secret. Cf. Widmark v. Northrup King Co., 530 N.W.2d 588, 592 (Minn. Ct. App. 1995) (concluding that a customer list was not a trade secret because the customers "were readily ascertainable" and there was no evidence of efforts to keep customers' identities a secret). This Counterclaim is therefore dismissed.

### 3.     Tortious Interference and Prospective Advantage

Defendants assert that Riddle tortiously interfered with Geckobyte's contractual relationships and with its prospective advantage. Minnesota recognizes causes of action "for wrongful interference with both present and prospective contractual relations." United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632 (Minn. 1982). "A cause of action for tortious interference with contract has five elements: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." Sysdyne Corp. v. Rousslang, 860 N.W.2d 347, 351 (Minn. 2015) (quotation omitted). Interference with prospective economic advantage also requires intentional interference with a party's reasonable expectation of economic advantage that is "either independently tortious or in violation of a state or federal statute or regulation." Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc., 844 N.W.2d 210, 219-20 (Minn. 2014).

Plaintiffs argue that Defendants have failed to allege or identify any contract of which Riddle induced a breach, and that Defendants have presented no evidence of any intentional or improper interference. Because Defendants did not address these counterclaims, they are also dismissed.

### B.     Defendants' Motion

#### 1.     Employment Claims

Defendants argue that Riddle's employment-related claims—breach of EA, unjust enrichment, quantum meruit, and conversion—should be dismissed because they are barred by the statute of limitations and because Riddle was an at-will employee.

Minnesota courts apply a two-year statute of limitations if "the gravamen of the action is the breach of an employment contract." Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 832 (Minn. 2011) (quotation omitted); accord Minn. Stat. § 541.07(5) (stating that a two-year limitations period applies to any action "for the recovery of wages"). The gravamen of this action, however, is a business transaction to sell RTM to Geckobyte—it is simply not the recovery of wages or the breach of an employment contract. Thus, the two-year statute of limitations does not apply. Rather, Minnesota's six-year statute of limitations for breach of contract applies. See Minn. Stat. § 541.05, subd. 1(1).

Thus, Riddle can maintain his claims unless he was an at-will employee.[1] "The cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Art Goebel, Inc. v. N. Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997). "The construction and effect of a contract is . . . a question of law unless the contract is ambiguous." Denelsbeck v. Wells Fargo & Co., 666 N.W.2d 339, 346 (Minn. 2003). A contract is ambiguous if it is "reasonably susceptible of more than one meaning." Qwinstar Corp. v. Anthony, 882 F.3d 748, 754 (8th Cir. 2018) (quotation omitted).

At-will employment means that an employee can be terminated "for any reason or no reason, and that the employee . . . is under no obligation to remain on the job." Pine River State Bank v. Mettille, 333 N.W.2d 622, 627 (Minn. 1983). Here, the EA includes

---

[1] Defendants' contention on this issue is conclusory and does not address any of Plaintiffs' arguments in opposition.

several provisions suggesting that Riddle was an at-will employee. It provides that Riddle's "employment with Employer is as an 'at will' Employee." (EA ¶ 2.) And it also states that the "[e]mployer may terminate [Riddle]'s employment at any time for Cause or without Cause." (Id. ¶ 10.3.) Finally, it permitted Riddle to "terminate his employment with Employer at any time upon sixty (60) days prior written notice." (Id. ¶ 10.1.)

But, the EA also includes provisions that support Plaintiffs' contention that Riddle's employment was not at-will, because the term of employment was definite and the EA contains termination conditions. See Kvidera v. Rotation Eng'g & Mfg. Co., 705 N.W.2d 416, 421 (Minn. Ct. App. 2005) (emphasis omitted) ("[A]n employment agreement may supersede the at-will doctrine if it contains either termination conditions or a specified duration."). Specifically, the EA stated that Riddle's employment "shall commence [on] the date hereof and continue until December 31, 2020." (EA ¶ 2.) It also provides numerous definitions and examples of what constitutes cause to terminate Riddle, which are presumably unnecessary if Riddle could be terminated for any reason or no reason. (See id. ¶ 10.3.1 through 10.3.6.)

The Court must "construe a contract as a whole," Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 525 (Minn. 1990), and if an apparent conflict exists between two clauses in a contract, the Court has a "duty to find harmony between them and to reconcile them if possible." Anthony, 882 F.3d at 755 (quotation omitted). The Court cannot, however, harmonize these conflicting provisions regarding Riddle's employment status and thus the EA is ambiguous regarding Riddle's employment status.

Consequently, "parol evidence may be considered to determine the intent of the parties." Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826, 832 (Minn. 2012).

Plaintiffs produced an earlier draft version of the EA containing the following termination provision: "Either party hereto shall have the right to terminate the employment of Employee upon thirty (30) days prior written notice of the other party. Notwithstanding the foregoing sentence the employment of Employee is and is intended to be as an 'at will employee.'" (Riddle Aff. (Docket No. 68-3) Ex. 3 (Draft EA).) Riddle crossed out that language, stating that he understood that this "provision will be eliminated" and replaced with a "provision entitling the employer to terminate for 'cause.'" (Id. ¶ 10.) But the earlier version also provided that Riddle's "employment with Employer is as an 'at will' Employee" in another provision, and there was no annotation to change that provision. (Id. ¶ 2.)

"[A]mbiguous contract terms must be construed against the drafter," Hilligoss v. Cargill, Inc., 649 N.W.2d 142, 148 (Minn. 2002), but a reasonable juror could nevertheless conclude that the parties intended Riddle to be an at-will employee in the final version of the EA. Riddle's employment status is a question of fact that precludes summary judgment because the EA is reasonably susceptible to more than one interpretation. The Motion on this basis is denied.

Finally, Defendants argue that RTM's claims should also be dismissed because the APA states that RTM forfeits any right to receive payments if Riddle is terminated pursuant to the EA. (See APA ¶ 9.10.) But whether Riddle was terminated pursuant to the EA is a question of fact, so the Court cannot grant Defendants' Motion against RTM.

### 2. Fraudulent Inducement

Defendants argue that the fraudulent inducement claim is barred because it stems from the same operative facts that give rise to Plaintiffs' breach of contract claims. Whether Plaintiffs' breach of contract claims precludes their fraudulent inducement claim "turns on whether the contract and fraud claims represent one cause of action with multiple theories of recovery or two distinct causes of action." McDonald v. Johnson & Johnson, 776 F.2d 767, 769 (8th Cir. 1985). But "courts agree that fraud in inducing a contract and a later breach of that contract represent two distinct causes of action under Minnesota law." McDonald, 776 F.2d at 770.

Here, Plaintiffs claim that Fryberger fraudulently induced Riddle to enter into the APA and the EA, because Fryberger never intended to pay Riddle. Thus, like McDonald, Plaintiffs' fraudulent inducement claim "arose when [Defendants] first made the promises, without intending to honor them, that allegedly induced [P]laintiffs to enter into the [APA and the EA]; [P]laintiffs' breach of contract claim[s] arose only after [Defendants] later failed to fulfill those promises." Id. Defendants' argument on this basis is rejected.

### 3. Remaining Arguments

Finally, Defendants argue in two footnotes at the end of their brief that the unjust enrichment and quantum meruit claims should be dismissed because the existence of express contracts precludes recovery on quasi-contract claims, and that the conversion claim should be dismissed because there was no property interest involved. The Court need not address these arguments because they are "in a conclusory fashion and without

12

supporting affidavits, or testimony, or argument." See Brodsky v. Brodsky, 733 N.W.2d 471, 478 (Minn. Ct. App. 2007). In any event, Defendants' argument on the quasi-contract claims is meritless because Plaintiffs may assert alternative claims even if those claims are inconsistent; "[c]ourts . . . routinely permit the assertion of contract and quasi-contract claims together." Cummins Law Office, P.A. v. Norman Graphic Printing Co., 826 F. Supp. 2d 1127, 1130 (D. Minn. 2011) (Kyle, J.). Plaintiffs' conversion claim references "the assets of RTM" as the property interest. (Am. Compl. ¶ 58.) Defendants do not explain why these assets are not an enforceable property interest. Defendants' arguments as to these claims are without merit.

**CONCLUSION**

The non-compete provision is unenforceable, and sufficient evidence exists to present a question of fact regarding Riddle's employment status. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendants' Motion for Summary Judgment (Docket No. 54) is **DENIED**;

2. Plaintiffs' Motion for Summary Judgment (Docket No. 60) is **GRANTED**; and

3. Defendants' Counterclaims (Docket No. 15) are **DISMISSED with prejudice**.

Dated: June 22, 2018

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge